THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAUL E. MUSKETT and JAMES A. MUSKETT, | : | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | : | Civil No. 08-3975(JBS/JS) |
| v. | : | |
| CERTEGY CHECK SERVICES, INC., | : | **OPINION** |
| Defendant. | : | |

APPEARANCES:

James A. Muskett, Esq.
MUSKETT & MUSKETT
6515 Ventnor Ave.
Ventnor, NJ 08406
      Counsel for Plaintiffs

Dante C. Rohr, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
      -and-
Hillary Ann Fraenkel, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
425 Eagle Rock Avenue
Suite 302
Roseland, NJ 07068
      -and-
Andrew Michael Schwartz, Esq.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
1845 Walnut Street
17th Floor
Philadelphia, PA 19103
      Counsel for Defendant

**SIMANDLE,** District Judge:

This case arises out of several instances in which Defendant Certegy Check Services declined to authorize checks offered by Plaintiffs Paul and James Muskett as payment for goods at Home Depot and Staples stores.  Plaintiffs have alleged defamation as well as violations for the New Jersey Consumer Fraud Act ("NJCFA"), the Fair Credit Reporting Act ("FCRA") and the Fair Credit Billing Act ("FCBA").[1]  The action is presently before the Court on Defendant's unopposed motion for summary judgment [Docket Item 23].  The Court will grant Defendant's unopposed motion for the reasons expressed below.

I.   **BACKGROUND**

A.   **Facts**

Certegy provides check authorization and warranty services to merchants.  (Def. Statement of Material Facts ¶ 6.)[2]  From

---

[1] On April 5, 2009, Plaintiffs consented to dismissal of their FCBA cause of action and accordingly this Court will grant Defendant summary judgment on this claim [Docket Item 12 at 29].

[2] Plaintiffs do not contest any of Defendant's statement of material facts not in dispute and so, pursuant to Local Civil Rule 56.1(a), those facts are deemed undisputed for the purposes of this summary judgment motion.  See, e.g., Glazewski v. Corzine, No. 06-4107, 2009 WL 5220168, at *1 (D.N.J. Dec. 31, 2009) (where pro se plaintiff failed to respond to defendant's statement of material facts not in dispute, those facts are deemed undisputed under Local Civil Rule 56.1(a)); Bernard v. Stanfield, No. 07-3394, 2009 WL 5205272, at *1-2 (D.N.J. Dec. 22, 2009) (same); Handron v. Sebelius, 669 F. Supp. 2d 490, 492 (D.N.J. 2009) (failure to respond to movant's statement of material facts not in dispute results in those facts being deemed undisputed pursuant to Rule 56.1(a)).

2006 through 2007, Home Depot and Staples had agreements with
Certegy whereby Certegy agreed to perform a series of risk
management and fraud detection processes before authorizing a
check offered as payment at a Home Depot or Staples retail store.
(Id. ¶¶ 9, 11.)  In addition, Staples elected to have warranty
coverage, so that Certegy would pay the amount of any authorized
check that was returned for insufficient funds.  (Id. ¶ 10.)  The
formula for calculating the risk of any particular check includes
specifications from the merchants.  (Id. ¶ 11.)  A non-warranty
merchant may determine whether the amount of the check or the
number of checks issued by the check-writer should be considered
in the calculation.  (Id.)  To initiate the authorization
process, the merchant enters the location number, the amount of
the check, the routing and account number, and sometimes the
checkwriter's government-issued identification card into a
computer system.  (Id.)  If Certegy declines to authorize a check
it will generally, but not always, provide a decline code to the
merchant with a reason for the declination.  (Id. ¶ 13.)  A
merchant is free to accept a check that has not been authorized,
but will not benefit from Certegy's warranty.  (Id. ¶ 15.)

       Plaintiffs are attorneys who practice together in the firm
Muskett & Muskett.  (Id. ¶ 5.)  Four times in January 2006, Paul
Muskett attempted to purchase items at the Home Depot in Egg
Harbor Township, New Jersey using checks.  (Id. ¶¶ 19-42.)  On

3

two of those occasions, the Home Depot cashier told Paul Muskett that Certegy had declined to authorize his check, but after a phone call to Certegy his checks were accepted.  (Id. ¶¶ 23, 28-32.)  On one occasion, Home Depot immediately accepted his check. (Id. ¶ 33.)  On the last occasion Certegy decline to authorize the check, the cashier did not give Paul Muskett a reason for declining the check, and Mr. Muskett left the store without completing his purchase.  (Id. ¶¶ 34-37.)

On July 23, 2007, Paul Muskett attempted to make another purchase with a check, this time at Staples in Somers Point, New Jersey.  (Id. ¶ 43.)  Staples provided the check information to Certegy electronically and received this response:

> Thank you, STAPLES 439.  Although we show no negative information on file, we must decline to authorize this transaction, based on certain established limits which may include recently authorized checks on this identification.  Please remember when declining checks to give your customer a "Consumer Turndown" card which tells the consumer how to contact Certegy Check Services for further information.  We ask that you use tact and discretion at this time to ensure your customer's privacy.

(Id. ¶ 50.)  Kevin Hoyt, the store manager, told Paul Muskett that the store would not accept the check, but did not provide a reason.  (Id. ¶¶ 44-45.)  James Muskett tried to make a purchase with a different check, but Staples received the same response from Certegy.  (Id. ¶¶ 47, 50.)  When Mr. Hoyt told Plaintiffs that the store would not accept this second check, Plaintiffs left the store without completing a purchase.  (Id. ¶ 49.)

4

On August 2, 2007, both Paul and James Muskett wrote letters to Certegy requesting "a free copy of my file at Certegy." (Def. Exh. G.)  In response Certegy provided both men with a consumer report file disclosure. (Def. Exhs. H & I.)  With regards to the check declined on July 23, 2007, Certegy explained: "This transaction fell outside of the guidelines Certegy has established for authorization." (Id.)

Plaintiffs have not suffered any economic loss as a result of the declinations of their checks. (Def. Statement of Material Facts ¶ 56.)  The only alleged injury suffered by Plaintiffs is embarrassment. (Id. ¶¶ 58-59.)

**B.   Procedural History**

On July 9, 2008, Plaintiffs brought suit in the Superior Court of New Jersey and Defendant subsequently removed the action to this Court, asserting jurisdiction pursuant to 28 U.S.C. § 1331.  In March 2009, Defendant filed a motion for summary judgment [Docket Item 9], which Plaintiffs opposed [Docket Items 12], but Defendant subsequently withdrew that motion without prejudice [Docket Item 21].  In their opposition to the March 2009 motion for summary judgment, Plaintiffs consented to dismissal of their Fair Credit Billing Act claim. (Pls. Apr. 5, 2009 Opp'n at 29.)  After completing discovery, Defendant submitted the instant motion for summary judgment and Plaintiffs have not opposed.

5

## II.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of

6

> proof concerning an essential element of the
> nonmoving party's case necessarily renders all
> other facts immaterial.

Celotex, 477 U.S. at 323.

In the present case, Plaintiffs' failure to respond "is not alone a sufficient basis for the entry of a summary judgment." See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) (holding that a local rule deeming unopposed motions to be conceded did not justify the grant of summary judgment without analysis under Rule 56(e), Fed. R. Civ. P.). The Court must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is "appropriate," as required by Rule 56(e), Fed. R. Civ. P. In order to grant Defendant's unopposed motion for summary judgment, where, as here, "the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law." Id. Additionally, pursuant to Local Civil Rule 56.1(a), Defendant's statement of material facts not in dispute, as to which Plaintiffs have filed no objection and counter statement, are deemed undisputed for the purposes of this summary judgment motion.

**B.    January 2006 Claims and Statute of Limitations**

As an initial matter, Defendant argues that Plaintiffs'
defamation and Fair Credit Reporting Act claims arising from the
January 2006 incidents are barred by the relevant statutes of
limitations.[3]   The Court agrees that Plaintiffs' defamation
claims arising from January 2006 are untimely, but will decline
to grant summary judgment as to Plaintiffs' FCRA claims based on
the statute of limitations.

Plaintiffs' defamation claims are subject to a one-year
limitations period.  N.J. Stat. Ann. § 2A:14-3.1 ("Every action
at law for libel or slander shall be commenced within 1 year next
after the publication of the alleged libel or slander.").
Plaintiff brought suit on July 9, 2009, more than one year after
the allegedly defamatory statements were made to the Home Depot
cashiers declining check authorization.  As a consequence,
Plaintiffs' defamation claims are untimely.

The FCRA, however, has a two-year statute of limitation from
"the date of discovery by the plaintiff of the violation that is
the basis for such liability."  15 U.S.C. § 1681p.  While
Plaintiffs may have discovered the falsity of the information

_____

[3] Plaintiffs' NJCFA claims are subject to the six-year
statute of limitations in N.J. Stat. Ann. § 2A:14-1 and are
therefore timely.  Trinity Church v. Lawson-Bell, 925 A.2d 720,
727 (N.J. Super. Ct. App. Div. 2007); DiIorio v. Structural Stone
& Brick Co., Inc., 845 A.2d 658, 663 (N.J. Super. Ct. App. Div.
2004).

passed on to Home Depot regarding authorization in January 2006, their claims regarding insufficient disclosure of the reasons for the declination accrued on August 17, 2007, when Certegy provided them with their disclosures.  Only then did Plaintiffs discover the alleged disclosure violation.  As a consequence, Plaintiffs' FCRA claims arising from January 2006 are timely.

### B.   Defamation

Defendant argues, among other things, that Plaintiffs cannot establish a defamation cause of action based on the July 23, 2007 incident at Staples because the statement made electronically by Certegy to Staples was not defamatory.  For the reasons to be expressed, the Court will grant Defendant summary judgment on Plaintiffs' defamation claims.

The elements of a defamation claim under New Jersey law are: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher."  Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1113 (N.J. 2009); DeAngelis v. Hill, 847 A.2d 1261, 1267-68 (N.J. 2004).  Whether a statement is defamatory is a question of law to be decided by the Court.  DeAngelis, 847 A.2d at 1268.  To make that determination the Court must consider (1) the content, (2) the verifiability, and (3) the context of the challenged statement.  Leang, 969 A.2d at 1113 (citing DeAngelis, 847 A.2d

9

at 1268).  "In general, words that subject a person to ridicule

or contempt, or that clearly sound to the disreputation of an

individual are defamatory on their face."  Id.

> The challenged statement at issue reads in its entirety:
>
> Thank you, STAPLES 439.  Although we show no negative
> information on file, we must decline to authorize this
> transaction, based on certain established limits which
> may   include   recently   authorized   checks   on   this
> identification.  Please remember when declining checks to
> give your customer a "Consumer Turndown" card which tells
> the consumer how to contact Certegy Check Services for
> further information.   We ask that you use tact and
> discretion   at   this   time   to   ensure   your   customer's
> privacy.

(Id. ¶ 50.)  Taking into consideration its content, the context,

and the factual nature of this statement, the Court concludes

that no reasonable person of ordinary intelligence could find

such statement to be defamatory.  See DeAngelis, 847 A.2d at 1268

("The content analysis requires courts to consider the fair and

natural meaning that will be given to the statement by reasonable

persons of ordinary intelligence.") (internal citations and

punctuation omitted).  Given the wide range of innocuous

explanations for such a refusal, such as a limit on the number of

checks any given customer can use a payment or a limit in the

amount of those checks, and the express acknowledgment that there

was "no negative information on file," the Court finds that this

statement could not be injurious to Plaintiffs (beyond the

inconvenience of being unable to use a check as a form of

payment).  Nothing in this statement could subject a person to

ridicule or contempt, nor does it undermine the reputations
(professional or otherwise) of either Plaintiff.  (It is also
inconceivable to this Court how two attorneys, Plaintiffs herein,
could believe such a statement to be defamatory under the long-
established requirements of New Jersey law.)  The Court concludes
that Plaintiffs have failed to offer evidence from which a
reasonable fact-finder could find that Defendant made a
defamatory statement about them.  Defendant is consequently
entitled to summary judgment on this claim.

    **C.**    **New Jersey Consumer Fraud Act**

    Defendant asks the Court to grant summary judgment on
Plaintiff's New Jersey Consumer Fraud Act claim, arguing that the
NJCFA does not apply to the circumstances of this case and
further that Plaintiffs have not offered any evidence of
ascertainable loss.  Defendant is correct that a central element
to a NJCFA claim is ascertainable loss.  Bosland v. Warnock
Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009) (finding the elements
of a NJCFA claim to be "1) unlawful conduct by defendant, 2) an
ascertainable loss by plaintiff, and 3) a causal relationship
between the unlawful conduct and the ascertainable loss").  Such
a loss must be of "moneys or property, real or personal."  N.J.
Stat. Ann. § 56:8-19; Lee v. First Union Nat'l Bank, 971 A.2d
1054, 1058 (N.J. 2009).  In this case, it is undisputed that
Plaintiffs did not suffer any loss of moneys or property.  (Def.

11

Statement of Material Facts ¶ 56.)[4]  In the absence of any
evidence of an ascertainable loss, Defendant is entitled to
summary judgment on Plaintiffs' NJCFA claim.[5]

**D.   Fair Credit Reporting Act**

Finally, Defendant seeks summary judgment on Plaintiffs'
claims under the Fair Credit Reporting Act, though it
acknowledges that Certegy is a "credit reporting agency" to whom
the FCRA requirements apply.  At best guess, it appears that
Plaintiffs claimed in their Complaint that Defendant submitted an
inaccurate report in violation of 15 U.S.C. § 1681e(b) and that
Defendant failed to provide proper disclosures under 15 U.S.C. §
1681g regarding the decision to decline authorization.[6]  The

----

[4] As with Plaintiffs' faulty defamation claim above,
Plaintiffs have filed a baseless claim under the New Jersey
Consumer Fraud Act.  The requirement that a consumer suffer an
ascertainable loss in money or property is so well-established
under NJCFA jurisprudence that it is difficult to understand how
two licensed attorney-plaintiffs could have disregarded it in
signing and filing their Complaint.

[5] The Court has found no evidence of an ascertainable loss
and will not address Defendant's argument regarding the
applicability of the NJCFA.

[6] In analyzing Plaintiffs' FCRA claims that Court is left at
a significant disadvantage, because Plaintiffs' complaint fails
to identify which of the thirty provisions of the FCRA have been
violated and Plaintiffs have not responded to Defendant's motion
for summary judgment.  Although Plaintiffs' Fifth Count mentions
the Fair Credit Reporting Act, the Complaint does not cite the
Act or any of its subdivisions.  The Court is left to wonder
whether these Plaintiffs actually consulted the FCRA and its
statutory provisions before (or after) filing suit.  Nonetheless,
Plaintiffs being a non-moving party (despite their failure to
oppose) the Court has done its best to identify the provisions on

Court finds that Plaintiffs have failed to submit evidence to
support either claim and will grant summary judgment in favor of
Defendant for the reasons explained below.

Section 1681e(b) states: "Accuracy of report. Whenever a
consumer reporting agency prepares a consumer report it shall
follow reasonable procedures to assure maximum possible accuracy
of the information concerning the individual about whom the
report relates."  The elements required to prove a violation of
this provision are: "(1) inaccurate information was included in a
consumer's credit report; (2) the inaccuracy was due to
defendant's failure to follow reasonable procedures to assure
maximum possible accuracy; (3) the consumer suffered injury; and
(4) the consumer's injury was caused by the inclusion of the
inaccurate entry."  <u>Philbin v. Trans Union Corp.</u>, 101 F.3d 957,
963 (3d Cir. 1996).

Plaintiffs have not offered evidence from which a reasonable
fact-finder could find that Certegy's report to Staples included
inaccurate information or that this inaccuracy was due to
Certegy's failure to follow reasonable procedures.  It is not
enough for Plaintiffs to show that they had sufficient funds in
their bank accounts to cover the offered check.  Certegy does not
have access to Plaintiffs' accounts, but is rather in the
business of calculating risk based on a formula.  Plaintiffs have

_____

which Plaintiffs might rely.

offered no evidence that the proposed check transaction did not fall "outside of the guidelines Certegy had established for authorization." Moreover, Plaintiffs have not offered any evidence whatsoever regarding the procedures used by Certegy, reasonable or otherwise. Given the absence of evidence the Court will grant Defendant summary judgment on any claim under Section 1681e(b) of the FCRA.

"Section 1681g requires consumer reporting agencies to disclose to a consumer, upon request, the nature, substance, and sources of information in their files that pertain to the consumer, 15 U.S.C. § 1681g(a)(1) and (2)." Houghton v. New Jersey Mfrs. Ins. Co., 795 F.2d 1144, 1147 n.4 (3d Cir. 1986). Expressly excluded from this disclosure requirement, however, is "any information concerning credit scores or any other risk scores or predictors relating to the consumer." 15 U.S.C. § 1681g(a)(1)(B). Moreover, "In the 2003 FACT Act amendments to the FCRA, Congress added an exemption for check services companies from certain requirements to provide consumers with access to credit scoring information." Holmes v. TeleCheck Int'l, Inc., 556 F. Supp. 2d 819, 839 (M.D. Tenn. 2008) (citing 15 U.S.C. § 1681c(d)(2)[7]). Therefore, Plaintiffs cannot bring a

---

[7] Section 1681c(d)(2) reads:

Key factor in credit score information. Any consumer reporting agency that furnishes a consumer report that contains any credit score or any other risk score or

14

claim against Certegy for failing to more fully explain how the proposed transactions fell outside the guidelines for authorization. <u>See</u> 15 U.S.C. § 1681g(a)(1)(B); <u>Holmes</u>, 556 F. Supp. 2d at 839 (finding as a matter of law that plaintiff cannot state a claim against a check services company for failure to identify the variables used to identify the level of risk in authenticating plaintiff's check).  If any other FCRA provision is applicable, it is not apparent to the Court nor have Plaintiffs invoked any in the many months since filing their Complaint.  The Court will grant summary judgment to Defendant on Plaintiffs' FCRA claim.

## III. CONCLUSION

As explained above, it is apparent that Plaintiffs Paul E. Muskett and James A. Muskett, members of the New Jersey Bar, did not bring the same level of care and professionalism to the filing of multiple baseless claims in this case as they might have in representing a client.  For reasons best known to

---

predictor on any consumer shall include in the report a clear and conspicuous statement that a key factor (as defined in section 609(f)(2)(B) [15 USCS § 1681g(f)(2)(B)]) that adversely affected such score or predictor was the number of enquiries, if such a predictor was in fact a key factor that adversely affected such score. This paragraph shall not apply to a check services company, acting as such, which issues authorizations for the purpose of approving or processing negotiable instruments, electronic fund transfers, or similar methods of payments, but only to the extent that such company is engaged in such activities.

Plaintiffs, they launched litigation seeking relief that was untethered to the established requirements of New Jersey law of defamation and of the Consumer Fraud Act, as well as ignorant of the mandates of federal law under the Fair Credit Reporting Act. This misdirected effort consumed the Defendant's resources and the Court's time over the 22-month course of this case, without apparent justification in the record.  Such tactics look more like a personal vendetta against Defendant than normal litigation filed in good faith.  For the foregoing reasons, Defendant's unopposed motion for summary judgment shall be granted and the Complaint shall be dismissed with prejudice.  The accompanying Order will be entered.  Costs will be taxed in favor of Defendant Certegy Check Services, Inc.

July 6, 2010
Date

Jerome B. Simandle
JEROME B. SIMANDLE
U.S. District Judge

16